UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AARON GREENSPAN, *Plaintiff*, v. UNITED STATES SECURITIES AND EXCHANGE COMMISSION, *Defendant*. | Case No. 1:22-cv-01153-RCL |

**MEMORANDUM OPINION**

Before the Court in this *pro se* lawsuit is Plaintiff Aaron Greenspan's Motion [ECF No. 31] for Leave to File Amended And/Or Supplemental Complaint. For the reasons set forth below, the Court will **GRANT IN PART** and **DENY IN PART** Mr. Greenspan's motion.

I.   BACKGROUND

On April 26, 2022, Mr. Greenspan filed a Complaint against the United States Securities and Exchange Commission ("SEC") seeking to compel the agency to produce documents pursuant to multiple Freedom of Information Act ("FOIA") requests. 5 U.S.C. § 552 *et seq.*; Compl., ECF No. 1. On July 13, 2022, the SEC filed its Answer. Answer, ECF No. 8. On January 12, 2023, Mr. Greenspan moved to amend his initial complaint, which the SEC did not oppose. *See* Pl.'s Mot. for Leave to File Am. And/Or Suppl. Compl., ECF No. 20. The Court granted this motion on June 1, 2023. Order, ECF No. 23.

In the First Amended Complaint ("FAC"), Mr. Greenspan alleges that he submitted five FOIA requests to the SEC seeking documents relating to: two investigations into Tesla, Inc.; emails by and from former SEC employee David Misler; SEC correspondence to or from

1

Columbia Law School professor Joshua Mitts; and the February 2019 deposition video of Meta Platforms, Inc. CEO Mark Zuckerberg, conducted by SEC staff.  First Am. Compl., ECF No. 24. Mr. Greenspan claims that, in each instance, the agency stonewalled his requests and either failed to produce documents or provided only unsatisfactory partial production.  *Id.*  These actions, according to Mr. Greenspan, violate FOIA's requirement that agencies promptly produce documents, thus entitling him to relief.  *Id.*  Since this case's inception, eight status conferences have taken place, with the most recent occurring on August 30, 2023.  Status Report, ECF Nos. 11, 17, 19, 22, 26–28, 30.

On June 10, 2024, Mr. Greenspan filed the instant motion to amend his complaint for the second time.  Pl.'s Mot. for Leave to File Am. And/Or Suppl. Compl. ("Pl.'s Mot."), ECF No. 31.  In the Proposed Second Amended Complaint ("Proposed SAC"), Mr. Greenspan seeks to add twelve new counts to the operative complaint.  Proposed Second Am. Compl., ECF No. 31-1.  These counts can be divided into two categories.  The first relates to Mr. Greenspan's efforts to obtain documents from the SEC through FOIA requests.[1]  *Id.*  The facts alleged in each of these counts follow a similar pattern: Mr. Greenspan alleges that he submitted a FOIA request to the SEC, that the agency stonewalled these requests, and now, after many months of non-compliance or partial compliance, Mr. Greenspan is seeking to add these FOIA requests to the

---

[1] Count II seeks to compel the SEC to produce documents relating to investigations into Bridgewater Associates and/or related Bridgewater companies controlled by Ray Dalio.  Counts III through VI are substantially similar to Counts I through IV in the FAC.  Count VII seeks the deposition transcript of Meta Platforms, Inc. CEO Mark Zuckerberg conducted by SEC staff.  Count VIII is substantially similar to Count V in the FAC.  Count IX seeks emails sent by SEC Regional Director Erin Schneider.  Count X seeks emails sent to or from specified current and former SEC employees along with emails sent to or from any other .gov email address containing the word "optic." Count XI seeks emails sent between any individuals with a sec.gov domain name and individuals with a ftx.com or alameda-research.com domain name.  Count XII is substantially similar to Count XI in the Proposed SAC.  Count XIII seeks documents relating to an SEC investigation into Gaotu Techedu, Inc.  Count XIV seeks documents relating to any investigations the SEC conducted into fake and/or duplicate account disclosures or methodology on Facebook.com.  Count XV seeks emails relating to a database mishap reported on June 2, 2023, by Reuters.com. Count XVI seeks documents relating to Tesla, Inc.'s response to SEC subpoenas for a specified investigation. Count XVII seeks documents relating to investigations into the Cramer & Co. hedge fund.

2

current litigation.  *Id.*  Mr. Greenspan justifies omitting these counts from the FAC by explaining that, with the exception of one request, he was still in correspondence with the SEC at the time the FAC was filed and did not want to risk creating needless litigation by including those counts in the FAC.[2]  Pl.'s Reply 6, ECF No. 33.

The second category relates to the SEC's alleged violations of Mr. Greenspan's civil rights under 42 U.S.C. § 1983.  Proposed SAC ¶¶ 234–53.  In the Proposed SAC, Mr. Greenspan claims that he is a data journalist and short-seller who investigates the world's rich and powerful to uncover wrongdoing.  *Id.* at ¶ 1, 24.  As part of that role he will, at times, submit tips to the SEC's Office of the Whistleblower pursuant to Section 922 of the Dodd-Frank Act.  *Id.* at ¶ 1.  On November 21, 2021, Mr. Greenspan submitted a tip that he claims contained evidence of securities fraud, accounting fraud, tax fraud, and other misconduct by Tesla, Inc.  *Id.* at ¶¶ 10–12.  However, on March 13, 2023, the SEC closed the internal ticket associated with this tip, allegedly without ever having examined the evidence.  *Id.* at ¶ 17.  According to Mr. Greenspan, this inaction is due to an unspoken animus the SEC harbors toward *pro se* tipsters and a reluctance by the agency to appear supportive of short-sellers.  *Id.* at ¶¶ 20–25.  In failing to properly process his tip, Mr. Greenspan alleges that the SEC violated his civil rights.  *See id.* at ¶ 253.

The SEC opposes Mr. Greenspan's motion for leave to amend, arguing that the proposed amendment would radically alter the scope and nature of the litigation, would cause an undue delay of this action, and would prejudice the SEC by adding new claims that were available to Mr. Greenspan at the time he filed the FAC.  Def.'s Opp'n 3–5, ECF No. 32.  Mr. Greenspan has

---

[2] Mr. Greenspan alleges that his last correspondence with the SEC regarding the FOIA request in Count IX was on January 12, 2023, 140 days before he filed the FAC.  Pl.'s Reply 6.

filed a reply. Pl.'s Reply, ECF No. 33. Mr. Greenspan's Motion is therefore ripe for this Court's review.

## II.   LEGAL STANDARDS

### A. Motion for Leave to Amend the Complaint

Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend its pleading once as a matter of course no later than" 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1); *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282 (D.C. Cir. 2000). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). If asked, "[t]he court should freely give leave when justice so requires." *Id.* The grant or denial of leave lies in the sound discretion of the district court. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).

While Rule 15(a)(2) prescribes a "liberal amendment policy," leave to amend will not be granted automatically. 6 Wright & Miller, Federal Practice & Procedure § 1487 (3d ed.). Instead, leave to amend should be freely given absent the presence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In deciding whether to grant or deny the amendment, courts should "consider the relationship between the proposed amended complaint and the original complaint." *Wharf, Inc. v. District of Columbia*, 321 F.R.D. 25, 30 (D.D.C. 2017). Generally, courts grant leave to amend when the amended complaint relates in a substantial way to the original complaint. *Mississippi Ass'n of Cooperatives v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991); *see also* 6 Wright & Miller, Federal Practice & Procedure § 1487 (3d ed.) (explaining courts

have granted amendments when "the opponent could not claim surprise" and "effectively should have recognized that the new matter included in the amendment would be at issue."). Conversely, "[w]here . . . the complaint, as amended, would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action, leave to amend should be denied." *Mississippi Ass'n of Cooperatives*, 139 F.R.D. at 544; *see also Nat'l Treasury Emps. Union v. Helfer*, 53 F.3d 1289, 1295 (D.C. Cir. 1995) (affirming denial of Appellants' motion to amend the complaint because the new claims "bore 'only tangential relationship' to the original claim").

Additionally, "undue delay is a sufficient reason for denying leave to amend." *Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996) (citing *Foman*, 371 U.S. at 182). When determining whether a delay is undue, courts should take into account the actions of the parties and the possibility of any resulting prejudice caused by granting the amendment. *Id.*; *see also Sinclair v. Kleindienst*, 645 F.2d 1080, 1085 (D.C. Cir. 1981) (reversing denial of Plaintiffs' motion to amend the complaint because Plaintiffs' "substantial delay" between receipt of the revealing documents under FOIA and filing the motion was "insignificant relative to the five-year inability of the FBI to locate the same wiretaps in the F.B.I. indices"); *Hayes v. New England Millwork Distribs., Inc.*, 602 F.2d 15, 19 (1st Cir. 1979) ("[C]ourts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party.").

### III. DISCUSSION

#### A. The Court Grants Mr. Greenspan's Motion to File a Second Amended Complaint as to Counts II through XVII

Given that more than 21 days have lapsed since the SEC answered Mr. Greenspan's original complaint, Rule 15(a)(2) governs this motion. That provision outlines two avenues for

amending a complaint. The first entails receiving written consent from the opposing party, which is not applicable here because the SEC opposes Mr. Greenspan's motion. The second entails receiving leave of the court, which is to be granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is this latter standard that the Court must apply in deciding whether to grant or deny Mr. Greenspan's motion. As explained below, the Court will grant Mr. Greenspan's Motion as to Counts II through XVII of the Proposed SAC because all of those Counts are brought under FOIA regarding Mr. Greenspan's outstanding requests. The Court will deny Mr. Greenspan's Motion as to Count I, because this Count is brought under a different statute and rests on an entirely different legal theory and set of facts.

In opposing the motion, the SEC argues that the amendment would radically alter the scope and nature of the litigation. Def.'s Opp'n 3. But this argument fails as to Counts II through XVII of the Proposed SAC because all of these counts concern the SEC's alleged failure to comply with Mr. Greenspan's FOIA requests. In each of those Counts, Mr. Greenspan alleges that he submitted a FOIA request seeking documents related to either SEC investigations or communications, but that the agency either failed to produce documents responsive to the request or provided unsatisfactory partial production. First Am. Compl., ECF No. 24; Proposed Second Am. Compl., ECF No. 31-1; Pl.'s Reply 2–3. Further, each count is premised on the same alleged statutory violation—the SEC's failure to comply with its obligations under FOIA. First Am. Compl., ECF No. 24; Proposed Second Am. Compl., ECF No. 31-1; Pl.'s Reply 2–3. Adding these Counts to the Complaint would simply incorporate additional instances of the SEC's alleged failure to comply with Mr. Greenspan's FOIA requests, thus ensuring that these related claims are heard together.

The SEC's next argument is that granting leave to amend would constitute an undue delay because the motion was filed more than two years after Mr. Greenspan filed the FAC. Def.'s Opp'n 3–4. While the SEC is correct that "undue delay is a sufficient reason for denying leave to amend," *Atchinson*, 73 F.3d at 426, undue delay is not determined solely by the passage of time. Instead, when assessing whether delay is undue, courts look to both the "reason" for the delay, *Petworth Holdings, LLC v. Bowser*, 333 F.R.D. 297, 299 (D.D.C. 2019), and "the possibility of any resulting prejudice," *Atchinson*, 73 F.3d at 426. And here, Mr. Greenspan explains that the reason for his delay was to avoid creating needless litigation because when he filed the FAC, he was still in communication with the SEC regarding the FOIA requests he now seeks to include. Pl.'s Reply 6, ECF No. 33. For example, Mr. Greenspan alleges in Count X of the Proposed SAC that on November 30, 2021, he submitted a FOIA request for emails sent to or from specified current and former SEC employees along with emails sent to or from any other .gov email address containing the word "optic." Proposed Second Am. Compl. ¶¶ 137–167, ECF No. 31-1. The SEC then provided Mr. Greenspan an estimated date of completion for his FOIA request of May 31, 2023, failed to meet its own deadline, informed Mr. Greenspan that his request would not be completed for another three years, and closed the FOIA request against his wishes. *Id.* It was only after being strung along for multiple years did Mr. Greenspan feel it necessary to seek to compel the SEC to comply with this FOIA request.

And while an undue delay can be found in a situation where "the movant[ ] failed to promptly allege a claim for which they already possessed evidence," *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 9 (D.D.C. 2013), this determination "is ultimately case-specific and depends in significant part on the parties' actions." *Hawthorne v. Rushmore Loan Mgmt. Servs.*, LLC, No. CV 20-393 (RDM), 2022 WL 6725957, at *2

7

(D.D.C. Oct. 10, 2022); *see Sinclair*, 645 F.2d 1080 at 1085. In light of the SEC's alleged actions here, its argument that granting leave to amend would constitute an undue delay is unconvincing and somewhat ironic, as it is the agency's own actions that have necessitated this amendment in the first place.

  Finally, the SEC argues that granting leave to amend would cause it undue prejudice. But "[u]ndue prejudice is not mere harm to the non-movant," but rather, "a denial of the opportunity to present facts or evidence which would have been offered had the amendment been timely." *Does I through III v. District of Columbia*, 815 F.Supp.2d 208, 215 (D.D.C. 2011) (internal quotation marks omitted); *see e.g.*, *Gilliard v. Gruenberg*, 302 F. Supp. 3d 257, 274 (D.D.C. 2018) (granting Plaintiff's motion for leave to amend because the parties had not yet begun to "conduct discovery" nor had the court "considered any dispositive motions").

  This case is at a stage where the SEC has not completed production nor filed for summary judgment. In fact, the only substantive motion is this one currently before the Court. In its opposition, the SEC makes vague assertions that undue prejudice should be found because the "new claims" in the Proposed SAC were "largely available" to Mr. Greenspan at the time he filed the FAC. But this argument fails to explain how granting leave to amend might deny the agency an opportunity to present facts or evidence. Indeed, because Mr. Greenspan moved for leave to amend the FAC before FOIA production and before the Court considered any substantive motions, the SEC is not denied an opportunity to present facts or evidence. Accordingly, the SEC fails to demonstrate that it will be unduly prejudiced by the amendment.

  Denying Mr. Greenspan's Motion to amend as to Counts II through XVII would simply "delay the inevitable," unnecessarily forcing Mr. Greenspan to file a separate FOIA lawsuit regarding the same subject matter against the same agency, which would "very likely be

8

consolidated back into this case." Pls.' Reply 1.  Therefore, the Court is persuaded that granting leave to amend as to Counts II through XVII in the Proposed SAC is in the interests of justice because both the subject matter and wrongdoing alleged in those counts bear substantial similarity to those alleged in the FAC, those counts were justifiably omitted when the FAC was filed, and their inclusion would not prejudice the SEC as the litigation is still in its infancy.

### B. The Court Denies Mr. Greenspan's Motion to File a Second Amended Complaint as to Count I

As to Count I of the Proposed SAC, the Court concludes that its inclusion would "radically alter the scope and nature of the case" and bears only a "tangential relationship" to the original action. *Mississippi Ass'n of Cooperatives*, 139 F.R.D. at 544.  Unlike the other counts, which focus on Mr. Greenspan's FOIA requests to the SEC, Count I alleges intentional discrimination and violations of Mr. Greenspan's civil rights. *Id.* at ¶ 252.

Including this Count would drastically increase the scope and nature of the case because it would introduce an entirely new legal theory—a civil rights violation under 42 U.S.C. § 1983—whereas all of the counts in the FAC focus on Mr. Greenspan's ongoing FOIA request disputes with the SEC.  Proposed Second Am. Compl. ¶¶ 234–53, ECF No. 31-1; First Am. Compl., ECF No. 24.  Such an inclusion far exceeds the scope of the FAC and would transform what is presently a pure FOIA case into a highly fact-intensive civil action, and courts in this District have "repeatedly rejected requests by FOIA litigants to add additional claims that would alter the scope and nature of a previously straightforward FOIA dispute." *Scarlett v. Off. of the Insp. Gen.*, 2022 WL 111236, at *3 (D.D.C. Jan. 10, 2022) (cleaned up) (citing cases); *c.f. Day v. U.S. Dep't of State*, No. CV 17-1418 (EGS), 2020 WL 1078955, at *10 (D.D.C. Mar. 6, 2020) (denying leave to amend where plaintiff sought to amend his straightforward FOIA litigation to add 16 new defendants and raise new claims under the Torture Victim Protection Act).

Furthermore, Count I bears only a tangential relationship to the other counts. In his reply, Mr. Greenspan attempts to link Count I to the other counts by explaining that one of the purposes of the whistleblower program is to incentivize private actors to investigate corporate misconduct, and that FOIA requests are an integral tool for these investigators. Pl.'s Reply 6–7. Therefore, as an investigative journalist, Mr. Greenspan argues that the SEC's refusal to consider his tip is directly connected to his FOIA requests with the agency. *Id.* But the connection between the SEC's alleged civil rights violation and the FOIA requests is too attenuated to warrant its inclusion into the present litigation at this stage.

Therefore, the Court concludes that granting leave to amend as to Counts I in the Proposed SAC is not in the interests of justice because the wrongdoing alleged in that count—the SEC's violation of Mr. Greenspan's civil rights—would radically alter the scope and nature of the case and bears only a tangential relationship to the counts in the FAC.

## IV.   CONCLUSION

For these reasons, the Court will **GRANT** Mr. Greenspan's Motion [ECF No. 31] as to Counts II through XVII of the Proposed SAC and **DENY** Mr. Greenspan's Motion as to Count I of the Proposed SAC. A separate Order consistent with this Memorandum Opinion shall issue.

DATE: 3/25/25

Royce C. Lamberth
United States District Judge